# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

JEAN FEDELICH

    Plaintiff

v.

AMERICAN AIRLINES

    Defendant

**Civil No. 09-1218 (SEC)**

## OPINION AND ORDER

Pending before the court are a Motion for Summary Judgment (Docket No. 34) and a Motion *in Limine* to exclude expert testimony (Docket No. 35) filed by Defendant American Airlines ("AA").  Plaintiff, Jean Fedelich ("Fedelich"), opposed both the Motion for Summary Judgment (Docket No. 45) and the Motion *in Limine* (Docket No. 42).  After considering all the filings and the applicable law, for the reasons stated below, both Defendant's Motion *in Limine* and Motion for Summary Judgment will be **GRANTED**.

**Factual and Procedural Background**

Plaintiff filed the above captioned law suit on March 4, 2009 under Articles 1802 and 1803 of the Civil Code of Puerto Rico, 31 P.R. Laws § 5141-5412, seeking redress for the damages suffered as a result of her fall at an international baggage carousel in the San Juan International Airport, which is allegedly administered and maintained by Defendant.   Docket No. 1.

On March 17, 2008, Plaintiff was on a direct flight from the Dominican Republic to Miami. Docket No. 34-2.  However, after Plaintiff's flight was cancelled, she was rescheduled to fly through San Juan, Puerto Rico, and arrive in Fort Lauderdale at approximately the same time Plaintiff's original flight would have arrived.  Id.  While Defendant claims that Plaintiff

consented to this change, Plaintiff alleges she had no choice but to accept the change in routing. However, this fact is immaterial to the present dispute.

After arriving in San Juan, Plaintiff proceeded to the international baggage claim in order to gather her luggage, proceed to U.S. Customs and Immigration, and subsequently board her flight to Fort Lauderdale.  Id.  Although originally told the luggage would be available at carousel number three, passengers were informed to proceed to carousel number four.  See Docket No. 34-3.  Plaintiff stated that only one other passenger was present at carousel number four when she arrived.  Docket No. 34-2.  Plaintiff saw her bag on the carousel, on top of other luggage, and proceed to pick it up.  Id.  Unable to immediately remove her bag, Plaintiff grabbed it and walked around the carousel as it circulated.  Id.  Plaintiff stated that she did not see the emergency stop box attached to the carousel, and as a result, tripped over it and fell, fracturing her left wrist.  Id.

The following averments made by both parties are in dispute.  Plaintiff claims the emergency box was negligently placed, thereby causing her fall and resulting injuries.  See Docket No. 40-2.  Since AA controls carousel number four, Plaintiff alleges that AA is liable for any injuries there sustained.  See Docket No. 1.  Defendant, on the other hand, claims that it was Plaintiff's own negligence in walking next to the moving carousel, and in failing to pay attention as she walked, that caused her fall and resulting injuries.  Docket No. 34.  Moreover, Defendant contends that Puerto Rico tort law does not apply to the dispute, but rather the Montreal Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, S. Treaty Doc. No. 106-45, 2242 U.N.T.S. 350, U.S.C.S. Montreal Convention ("Montreal Convention"), under which Defendant argues Plaintiff is not entitled to any relief. Id.

Additionally, Defendant claims that the emergency stop box is industry standard,  is found in numerous other airports, and complies with safety requirements.  Id.   Plaintiff, however, rejoins that the emergency stop box protrudes unnecessarily and excessively far into the pedestrian area around the baggage carousel.  She avers this is a design defect and is unreasonably dangerous.  Docket No. 40-2.  To support this assertion, Plaintiff submitted the expert testimony of S. Melville McCarthy ("McCarthy" or "expert witness"), which Defendant challenges as unreliable in its Motion *in Limine*.  See Docket Nos. 35 and 40-2.

**Motion *in Limine* to Exclude Expert Testimony**

Before addressing Defendant's Motion for Summary Judgment, this Court will rule on Defendant's Motion *In Limine* to exclude the testimony of Plaintiff's expert, McCarthy.  See Cortés-Irizarry v. Corporación Insular de Seguros, 111 F.3d 184, 188 (1st Cir.1997) (holding "If proffered expert testimony fails to cross [the] ... threshold for admissibility, a district court may exclude that evidence from consideration when passing upon a motion for summary judgment."); see also Southern Grouts & Mortars, Inc. v. 3M Co., 575 F.3d 1235, 1245 (11th Cir.2009) (holding that a trial court did not abuse its discretion in excluding an expert report at the summary judgment stage).  Defendant asks this Court to strike McCarthy's testimony claiming it is unreliable, prejudicial, and improper.  Docket No. 35.  Plaintiff, on the other hand, denies these allegations and claims that McCarthy is qualified to render an expert opinion. Docket No. 42.

*Standard of Review*

FED. R. EVID. 403 allows the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

**Civ. No. 09-1218 (SEC)**                                                              **4**

The admission of expert testimony is governed by FED. R. EVID. 702. Said rule provides:

[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Rule 702 "imposes a gate-keeping function on the trial judge to ensure that an expert's testimony 'both rests on a reliable foundation and is relevant to the task at hand.'" United States v. Mooney, 315 F.3d 54, 62 (1st Cir. 2002) (quoting Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 597, 113 S.Ct. 2786 (1993)).

Although a flexible and non-exclusive list, Daubert outlined specific factors that a trial court may consider when testing the reliability of an expert witness' testimony. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141, 119 S.Ct. 1167 (1999). A court must determine whether the expert will testify to scientific knowledge that will assist the trier of fact to understand and determine the facts in issue. Daubert, 509 U.S. at 593. This entails a preliminary assessment as to: (1) whether the reasoning or methodology underlying the expert testimony is scientifically valid, and (2) whether the reasoning or methodology can be applied to the facts of the case. Id. Specifically, in determining if the evidence is reliable, a court must consider: (1) whether Plaintiff's proffered scientific theory can and has been tested, (2) whether it has been subject to peer review and publication, (3) the known or potential rate of error of the test, and (4) the degree of acceptance of the theory in the scientific community. Daubert, 509 U.S. at 593-595; see also Seahorse Marine Supplies, Inc. v. P.R. Sun Oil Co., 295 F. 3d 68 (1ˢᵗ Cir.2002).

*Applicable Law and Analysis*

Defendant contends that McCarthy's opinion is unreliable, *ipse dixit*, or the mere unsupported opinion of an expert, which is a legally insufficient basis to support an admissible

expert's opinion.  Docket No. 35.  From McCarthy's deposition, Defendant points out several

factors that allegedly render the expert opinion unreliable.  These include that McCarthy (1)

used only photographic evidence of the emergency stop button and carousel to conduct his

analysis, (2) that he did not request any information or literature on the design of the baggage

carousel, (3) that he was unfamiliar with the events surrounding Plaintiff's fall since he did not

speak to Plaintiff nor did he review her deposition,[1] (4) that he did not physically inspect the

carousel, and expressed that there was no need to do so, (5) that he did not conduct any testing

nor research as to the safety standards applicable to the baggage carousel.  Id.  Moreover,

Defendant questions McCarthy's reasoning and central assumption, which is that since Plaintiff

tripped on the emergency stop box, the box must necessarily be defective.  Id.  Lastly,

Defendant alleges that McCarthy did not provide an alternative design that was mechanically

feasible, and that he is unqualified to render an expert opinion given that has never worked with

sloped conveyer belts.  Id.

Plaintiff responded that McCarthy is qualified as an expert in machine guarding[2] since

he has a master's degree in mechanical engineering, majored in machine design, and

participated in a publication about machine guarding.  Docket No. 42.  Furthermore, Plaintiff

argues that the report includes analysis using the Safe Design Methodology and Triodyne Safety

Brief to reach his opinion, a methodology which McCarthy testified is accepted in the industry

to evaluate the safety of a product.  Id.  Plaintiff also contends that McCarthy's analysis was

sufficient, in accord with industry standards, and argues that if there is not more extensive

---

[1] McCarthy believed that whether or not Plaintiff was familiar with the design of the carousel was of no consequence.  Docket Nos. 35 and 35-3.

[2] "Machine guarding is defined as a shield or device covering hazardous areas of a machine to prevent contact with body parts or to control hazards like chips and noise from exiting the machine." Docket No. 42.

research on record in the report, it is only because the case was simple enough that it did not require further analysis.  Id.

        The present case has certain similarities with Kumho Tire Co., 526 U.S. at 143-44, where the defendants challenged an engineer's expert testimony that a defective tire was the cause of a fatal vehicle accident.  In Kumho Tire Co., the expert's opinion was based on a visual and tactile inspection of the car tire, and upon a theory that, since at least two of the four physical symptoms indicating tire abuse were not present, the tire failure was caused by a defect.  Id. at 144, 153.  The court in Kumho Tire Co. did not doubt the expert's qualifications nor did it question whether the expert's methodology was generally unreliable.  Id. at 153.  Rather, the court's determination was based on "the reasonableness of using such an approach..." to " reliably determine the cause of failure of the particular tire at issue."  Id. at 154.  The Supreme Court upheld the District Court's decision to exclude the expert testimony due to, among other factors, the subjectiveness of the expert's method and the lack of other experts and secondary sources that supported his approach.  Id. at 155-56.

        Likewise, in the present case, the admissibility of McCarthy's testimony does not depend on his qualifications, but on whether his photographic inspection of the carousel is a reliable method to reach the conclusions he did about Plaintiff's fall at the AA baggage carousel.  See id. at 154 (admissibility of expert testimony depended on "reasonableness of using such an approach... to draw a conclusion regarding the particular matter to which the expert testimony was directly relevant.").

        While this Court has noted Defendant's argument regarding McCarthy's lack of specialized experience in sloped carousels, his experience as an engineer qualifies him to testify. See Docket No. 35.  In DaSilva v. American Brands, Inc., 845 F.2d 356, 361 (1st Cir.1988), the First Circuit reached a determination that expert testimony need not be limited "only from mechanical engineers who have had design experience with the specific machine in question"

because only experts with an interest in defending the design would be able to testify.  As in

DaSilva, McCarthy is "familiar with fundamental engineering principles of machine design"

and has had "extensive experience evaluating and recommending safety devices for machines."

Id.  Accordingly, he is qualified to render an expert opinion regarding the safe design of a

baggage carousel.  Id.  Based on the record, McCarthy has ample credentials, given that he is

a mechanical engineer holding a masters degree, and substantial experience in machine design

and machine guarding.  See Docket No. 42-2.  Thus, this Court cannot strike McCarthy's report

on the basis of his qualifications.

The remaining issue is whether the methodology used by McCarthy is sufficiently

reliable to reach a conclusion regarding the particular problem at hand. See Kumho Tire Co.,

526 U.S. at 154.  Plaintiff argues that given the simplicity of the case, and McCarthy's

significant experience, a detailed analysis was not necessary.  See Docket No. 42.  She asserts

that even a lay person could have reached the same conclusions by looking at the emergency

box. Id. Furthermore, McCarthy states that he followed the Safe Design Methodology to reach

his conclusions, which consists of the following three step process: (1) identifying severe

hazards, (2) preventing access to severe hazards whenever technically and economically

feasible, and (3) if it is not feasible to alter the design without defeating the utility of he product,

then appropriately warning of the risk of injury or death.  See Docket No. 42-5.  McCarthy

states that one accident, Plaintiff's accident, is enough to identify there is a severe hazard in the

design of the carousel.  See Docket Nos. 35-3, 42-5.  McCarthy also argues that given the

existence of other emergency boxes in baggage claim terminals, including AA's domestic

terminal, AA was aware of a safe alternative design, but kept the more dangerous model at the

international terminal.  See Docket No. 42-8.  Third, Plaintiff contends that, even if a safe

alternative design was not feasible, AA was negligent in not having provided sufficient warning

of its protruding emergency box.  See Docket No. 42.

Defendant challenges McCarthy's methodology and several of his assertions and this Court agrees.  Having reviewed McCarthy's deposition and expert testimony, this Court finds that McCarthy's photographic inspection of the carousel and the multiple assumptions, unsupported by factual evidence, made in his analysis, are insufficient to demonstrate that he used a reliable methodology to reach his conclusions.  Kumho Tire Co., 526 U.S. at 153 (citing Civ. Action No. 93-0860-CB-S (S.D.Ala. June 5, 1996)) (holding that "the methodology employed by the expert in analyzing the data obtained in the visual inspection, and the scientific basis, if any, for such an analysis" was unreliable).

Relevant case law does not support Plaintiff's contention that the case was so simple that it did not require significant research and analysis.  Trial courts exercise a gatekeeping function, the objective of which is to "make certain that an expert... employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  Id. at 152.  This Court finds it hard to believe that in his engineering work, McCarthy, if asked to evaluate the designs of baggage carousels for safety, would conduct no tests, would not research the safety standards, the specific design of the machine in question, its alternatives, nor past accident rates, and would intuitively render an opinion from a superficial visual analysis.

The opinion of an engineer is relevant in this dispute and would help a trier of fact because as an expert, he is able to understand and explain technical data specific to the carousel design and is able to identify safe alternative designs, if any.  In contrast, an expert who testifies about what he intuitively deducts is not helpful to a jury or this Court.  Daubert, 509 U.S. at 580 (testimony must assist the trier of fact to understand the evidence or to determine a fact in issue).  McCarthy does not explain what makes the emergency stop button particularly dangerous apart from asserting that the emergency stop box appears to protrude excessively. He asserts that there is an alternative design by presenting photos of a flat conveyor belt as evidence.  See Docket No. 34-6.  However, McCarthy does not explain how the alternative flat

design is safer since he conducted no testing to examine its safety, did not research accident rates, the design of the machinery, nor does he cite industry safety standards.  There is no evidence on the record that McCarthy was methodical about his approach since he has no documentation to support his assertions despite the Supreme Court's holding that expert testimony must comply with an evidentiary reliability standard.  Daubert, 509 U.S. at 590. The expert fails to point out how the design in dispute falls outside the safety standards, and he fails to explain to a trier of fact any concrete information about the design of the carousels.

In contrast to McCarthy's report, Defendant's expert, Dan Pockrus ("Pockrus") provides information that supports his position and helps the trier of fact make a decision based on concrete facts.  See Docket No. 34-10.  To wit, Pockrus explained how the sloped conveyor belt found in the international baggage claim is designed for high volume of passengers, how it complies with the standards set forth by the American Society of Mechanical Engineers, and how it is not mechanically feasible to make a less protrusive emergency box with the physical design of the slope-plate track and still comply with electrical requirements.  Id.  Additionally, Pockrus explains that the flat conveyor belt is meant for lower volume of passenger areas.  Id. Although this Court does not make any determinations as to the accuracy of Pockrus' testimony, Pockrus provides the Court with verifiable facts, and provides a reasoning behind his testimony rather than subjective, unsupported speculations.

It is undeniable that experts ofter times reach conclusions from a set of observations alone.  Kumho Tire Co., 526 U.S. at 156.  However, "nothing in either Daubert or the Federal Rules of Evidence requires that a district court admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."  Id. at 157.  According to Daubert, if tested, the expert's method should show an objective standard against which the court can measure the accuracy of Plaintiff's contentions.  Id. at 149.  This Court finds no such objectivity in

McCarthy's testimony.  Rather McCarthy's opinion is subjective, conclusory, and cannot reasonably be assessed for reliability.

McCarthy implies that Plaintiff's accident proves there is a defect in the design without having studied past accident rates, nor having conducted any testing.  See Docket No. 35. However, case law does not support an automatic conclusion of negligence from the mere occurrence of an accident.  In Gates v. Ford Motor Co., 494 F.2d 458, 460 (10th Cir. 1974), as it evaluated the case of man fatally injured while operating a tractor, the court held  that "injury, of itself, is not proof of a defect and raises no presumption of defectiveness."  More to the point, in Puerto Rico, the theory of *res ipsa loquitur* as a basis for recovery in negligence suits has been rejected.  See Wells Real Estate Inv. Trust II, Inc. v. Chardon/Hato Rey P'ship, S.E., 643 F.Supp.2d 182, 193 (D.P.R. 2009) (holding that the mere occurrence of a fuel spill did not demonstrate negligence on the Defendant's part in maintaining property) (citing Alberto O. Bacó v. Almacén Ramón Rosa Delgado Inc., 151 D.P.R. 711 (2000)).  Thus, McCarthy's presumption that Plaintiff's fall is proof of the carousel's defective design is in disaccord with local tort law.  Negligence on part of the injured party is a possibility, but from McCarthy's deposition it seems that the expert failed to consider this possibility since he did not review Plaintiff's account of the facts and his testimony seems to be based on the premise that the accident is proof of a defective design without considering how negligent Plaintiff might have been.

Furthermore, similar to Kuhmo Tire Co., the deposition transcript "cast(s) considerable doubt upon the reliability of the explicit theory and the implicit proposition" since there is "repeated  reliance on the subjective of his mode of analysis in response to question seeking specific information on how he could differentiate..." between safe alternative designs.  Kumho Tire Co., 526 U.S. at 154-55.  In several instances, McCarthy was asked questions to clarify the reasoning behind his assertions.  See Docket No. 35-3.  Instead of supplying Defendant and the

Court with specific information, McCarthy's answers compounded this Court's doubts about the reliability of his method to reach the specific conclusions included in his report. Id. For example, McCarthy (1) assumed, rather than investigated the reason why the emergency box was angled or tapered, (2) except for his intuition, he could not provide concrete facts as to why the flat conveyor belt was safer than the sloped belt, and (3) he testified that there was a mechanically feasible safe alternative design without having considered that the two designs (flat and sloped) might serve different functions and are designed accordingly, as Pockrus testified. See Docket Nos. 35 and 35-3. Since McCarthy's testimony seems to be based more on subjective elements than objective analysis, and because this Court has struggled to find verifiable facts to support the expert's conclusions, Defendant's Motion *in Limine* is **GRANTED** and McCarthy's testimony is stricken as unreliable.

**Motion for Summary Judgment**

This Court will now consider Defendant's Motion for Summary Judgment and make a decision in light of the above determination excluding McCarthy's expert testimony, which Plaintiff relied heavily on to support her negligence claims against Defendant.

*Standard of Review*

Fed. R. Civ. P. 56(b) provides that: "A party against whom a claim . . . is asserted . . . may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part [of the claims asserted against him/her]." The Court may grant the movant's motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248(1986); Ramírez Rodríguez v. Boehringer Ingelheim, 425 F.3d 67, 77 (1st Cir. 2005). At this stage, the court examines the record in the "light most favorable to the nonmovant," and

indulges all "reasonable inferences in that party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994).

Once the movant has averred that there is an absence of evidence to support the nonmoving party's case, the burden shifts to the nonmovant to establish the existence of at least one fact in issue that is both genuine and material. Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) (citations omitted). "A factual issue is 'genuine' if 'it may reasonably be resolved in favor of either party' and, therefore, requires the finder of fact to make 'a choice between the parties' differing versions of the truth at trial.'" DePoutout v. Raffaelly, 424 F.3d 112, 116 (1st Cir. 2005) (quoting, Garside, 895 F.2d at 48 (1st Cir. 1990)). By like token, 'material' "means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant." Rojas-Ithier v. Sociedad Española de Auxilio Mutuo, 394 F.3d 40, 42-43 (1st Cir. 2005) (citations omitted). Therefore, there is a trial-worthy issue when the "evidence is such that there is a factual controversy pertaining to an issue that may affect the outcome of the litigation under the governing law, and the evidence is sufficiently open-ended to permit a rational fact-finder to resolve the issue in favor of either side." Id (citations omitted).

In order to defeat summary judgment, the opposing party may not rest on conclusory allegations, improbable inferences, and unsupported speculation. See, Hadfield v. McDonough, 407 F.3d 11, 15 (1st Cir. 2005) (citing, Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). Nor will "effusive rhetoric" and "optimistic surmise" suffice to establish a genuine issue of material fact. Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997). Once the party moving for summary judgment has established an absence of material facts in dispute, and that he or she is entitled to judgement as a matter of law, the 'party opposing summary judgement must present definite, competent evidence to rebut the motion.' Méndez-Laboy v. Abbot Lab., 424 F.3d 35, 37 (1st Cir. 2005) (quoting, Maldonado-Denis v. Castillo Rodríguez,

23 F.3d 576, 581 (1st Cir. 1994)).  "The nonmovant must produce specific facts, in suitable evidentiary form sufficient to limn a trialworthy issue. . . .  Failure to do so allows the summary judgment engine to operate at full throttle." Id.; see also Kelly v. United States, 924 F.2d 355, 358 (1st Cir. 1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence."); Medina-Muñoz, 896 F.2d at 8, (quoting Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989)) (holding that "[t]he evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve").

*Applicable Law and Analysis*

Defendant seeks summary judgment on the argument that under the Montreal Convention, which he alleges is the applicable law in the current case, Plaintiff is barred from recovery.  See Docket No. 34.  Plaintiff, on the other hand, states that Puerto Rico tort law is controlling in this case, and that she is entitled to recover due to AA's negligence in maintaining its premises.  Id. at 40.  If, however, the Montreal Convention governed the dispute, Plaintiff alleges she would still be entitled to damages.  Id.

This Court first reviews if there is a genuine dispute as to a material fact between the parties.  Plaintiff accepted the majority of Defendant's list of material, uncontested facts, only qualifying fact 3 and denying 7-8, 11, and 20.  See Docket No. 40-2.  Of these, the only fact relevant to the issue being decided by this Court is fact 20, where AA stated that the emergency box found at the baggage carousel is industry standard and any manufacturer of sloped plate baggage carousel places the emergency box similarly on the outside of the carousel.  See Docket Nos. 34-2 and 40-2.  Plaintiff refuted this fact with McCarthy's expert testimony and submitted a statement with three additional uncontested facts, all referencing McCarthy's expert testimony.  See Docket No. 40-2.  Since this Court has found McCarthy's testimony unreliable

and struck it from the record, these three additional facts will not be considered.  Additionally, since there is no admissible evidence to refute Defendant's fact 20,  this Court must admit Defendant's version.

The issue in this case is whether AA was negligent in its maintenance of the international baggage carousel by placing the emergency stop box in a hazardous location.  See Silva v. American Airlines, Inc., 960 F.Supp. 528 (D.P.R. 1997).  While Plaintiff sued under Articles 1802 and 1803 of the Civil Code of Puerto Rico, Defendant argues that the claim is governed by the Montreal Convention, which applies to "all international carriage of persons, baggage, or cargo performed by aircraft for reward."  Montreal Convention, art. 17.

The Montreal Convention[3] would apply only if Plaintiff was injured in the process of embarking or disembarking, which is in dispute, with Defendant asserting baggage retrieval was part of disembarking, and Plaintiff arguing it was not.  Montreal Convention, art. 17(1) ("The carrier is liable for damage sustained in case of death or bodily injury of a passenger upon the condition only that the accident... took place on board the aircraft or in the course of any of the operations of embarking or disembarking.").  If in fact the Montreal Convention applies, Plaintiff's recovery is limited to what is available under the Convention since the claim would not be subject to local law.  See Acevedo-Reinoso v. Iberia Lineas Aereas de Espana S.A., 449 F.3d 7, 11 (1st Cir.2006) (holding that "an air carrier is not subject to liability under local law for passenger injuries covered by the Convention").  Article 17 states that Plaintiff may only recover if she suffered an accident, defined as

---

[3]When evaluating claims under the Montreal Convention, it is appropriate to look at cases interpreting the Warsaw Convention.  Although the Montreal Convention completely replaced the Warsaw Convention, courts rely on cases that apply the Warsaw Convention since they interpret similar provisions to those found in the Montreal Convention.  See Ugaz v. Am. Airlines, Inc., 576 F.Supp.2d 1354, 1360 (S.D.Fla. 2008).

> ...[when] passenger's injury is caused by an unexpected or unusual event or happening that is external to the passenger... But when the injury indisputably results from the passenger's own internal reaction to the usual, normal, and expected operation of the aircraft, it has not been caused by an accident...

Thus, the Montreal Convention is a more stringent standard than would apply if Puerto Rico tort law governed this dispute.

In order to determine which law is applicable in this case, this Court must examine whether Plaintiff was in the process of disembarking when she was injured.   Montreal Convention, art. 17(1).  This inquiry focuses on three factors (1) the passenger's activity at the time of the injury, (2) where the passenger was located, and (3) the extent to which the carrier was exercising control over the passenger at the moment of injury.  McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 317 (1st Cir. 1995) (citing Schroeder v. Lufthansa German Airlines, 875 F.2d 613, 617 (7th Cir.1989)).  However, courts have construed the act of embarking and disembarking narrowly, normally strongly relating the accident with the physical act of entering the plane.  McCarthy, 56 F.3d at 316-17;   see also MacDonald v. Air Canada, 439 F.2d 1402, 1405 (1st Cir. 1971) (holding that "it would seem that the operation of disembarking has terminated by the time the passenger has descended from the plane by use of whatever mechanical means have been supplied...").  The three factors are looked at in unison, not as separate inquiries.  Id. at 317.

In the present suit, Plaintiff was injured retrieving her luggage from the international baggage carousel, a location far removed from where passengers descend from the aircraft, the commonly understood meaning of disembarkation.  In addition, although connected to her flight, baggage retrieval was not an action necessary to become separated from the plane.  See Martinez-Hernandez v. Air France, 545 F.2d 279, 281 (1st Cir.1976).  Although the baggage carousel itself is maintained and managed by AA, Plaintiff was not under the control of the airline in the same sense as she was when she was entering or leaving the airplane.  Plaintiff was

free to roam around, and choose her path, unlike when the airline directs passengers to line up and enter the plane.  Although this Court notes that Plaintiff was not in an entirely public place and this has often been a consideration in determining whether a passenger was disembarking, this fact is not dispositive.  See McCarthy, 56 F.3d at 317-18; Ugaz, 576 F.Supp.2d at 1363-64. At the time of the fall, Plaintiff was free from AA's direction, removed from the arrival gate, and in the baggage claim area, a space where courts have held passengers are no longer in the process of disembarking.  See McDonald, 439 F.2d at 1405.  Therefore, Plaintiff was not disembarking within the meaning of the Montreal Convention.

This Court must then review Plaintiff's evidence for a tort claim under Puerto Rico law. Article 1802 of the Civil Code of Puerto Rico states that a "person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done."  Business owners have a duty to keep their "establishments in a safe condition so that the clients do not suffer harm or damage."  Torres v. KMart Corp., 233 F.Supp.2d 273, 278 (D.P.R. 2002) (citing Cotto v. Consolidated Mut. Ins. Co., 116 D.P.R. 644, 650 (1985)). Furthermore, "[l]iability is imposed in situations that involve risky conditions inside the business premises that the owner knew or should have known existed."  Id.   A plaintiff can recover by proving that the defendant had "actual or constructive knowledge of the dangerous condition that most likely than not caused the damage."  Id; see also Mas v. United States, 984 F.2d 527, 530 (1st Cir.1993).

Plaintiff's evidence against AA to support her claims that Defendant was negligent in maintaining its business premises is insufficient for a fact finder to reasonably find in her favor since it consists of nothing more than conclusory allegations.  Anderson,  477 U.S. at 252 (finding "the mere existence of a scintilla of evidence in support of plaintiffs position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). After adequate time for discovery, entry of summary judgment is appropriate when the

nonmovant party would have the burden of proof at trial on an essential factual element and has failed to "come forward with sufficient evidence to generate a trialworthy issue...." Clifford v. Barnhart, 449 F.3d 276, 280 (1st Cir.2006) (citing In re Spigel, 260 F.3d 27, 31 (1st Cir.2001)). Numerous depositions were taken, experts rendered testimony, and neither party has made a claim that they are unable to show sufficient evidence because they have not had ample opportunity to conduct discovery.  Moreover, it would be Plaintiff's burden at trial to establish AA's negligence under Articles 1802 and 1803 of the Civil Code of Puerto Rico. See Torres, 233 F.Supp.2d at 278; see also Mas, 984 F.2d at 530.

        This Court must determine whether the evidence presented by the Plaintiff is enough so that a trier of fact could reasonably find for her.  Anderson, 477 U.S. at 252.  McCarthy's testimony was the only evidence provided by Plaintiff to prove Defendant's alleged negligence in maintaining its business premises, and in her claim that the emergency stop box was excessively protrusive and caused her fall.  Now that this Court has stricken that testimony, all Plaintiff has submitted on this issue are her pleadings, where she states that since Defendant controlled the section of the airport where her accident occurred, AA is responsible for her injuries.  It is well established law that in order to defeat a motion for summary judgment, the party opposing the motion must present specific facts that support his or her contentions, and must not solely rely on the allegations in the pleadings. Borschow Hosp. & Med. Supplies v. Cesar Castillo Inc., 96 F.3d 10, 14 (1st Cir. 1996) (holding that the non-moving party "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial.") (citing Barbour v. Dynamics Research Corp., 63 F.3d 32, 37 (1st Cir.1995) (quoting Anderson, 477 U.S. at 256)).  Nonetheless, Plaintiff has failed to provide any admissible evidence to support a claim of negligence even though this is crucial and dispositive in her tort claim. As a result, Plaintiff's allegations are insufficient to defeat Defendant's motion for summary judgment.

**Civ. No. 09-1218 (SEC)**                                                    **18**

In light of the fact that Plaintiff has not, through sufficient evidence, demonstrated that there is a genuine issue of fact as to AA's alleged negligence, Defendant's Motion for Summary Judgment is **GRANTED**.

**Conclusion**

For the reasons stated above, Defendant's Motion *in Limine* and Motion for Summary Judgment are **GRANTED** and the case Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 20th day of July, 2010.

                              *S/ Salvador E. Casellas*
                              SALVADOR E. CASELLAS
                              United States District Judge